Mr. Gauntlet. Correct. I'd like to reserve three minutes for rebuttal. David Gauntlet on behalf of Plaintiff GK Skaggs. There's been a flurry of recent activity in this case, starting on June 3rd when I filed a 28-J letter calling the court's attention to two cases. One, a 2014 published decision from the California Court of Appeal entitled North Counties, which stands for the proposition germane to the breach of contract exclusions interpretation that the more inclusive use of the phrase arise out of, urged by the insurer, has been to provide coverage, not limit it. Because there's been much colloquy from opposing counsel suggesting there is no such authority. Well, there it is. It's also consistent with an earlier decision which I called attention to in a June 5th response to a June 3rd filing. And the June 3rd filing, again focused on the breach of contract, was by Hartford. And they cited two cases, Strategics and Trenches, which were both unpublished Ninth Circuit cases applying California law. My letter responded to why I believe the court's application of the breach of contract exclusion to bar a defense in those cases was inapplicable here because the authority they relied on was factually distinguishable and seemed to suggest that the exclusion should not be read narrowly against the insurer, as is otherwise meant in California. Specifically, this, by the way, does California law apply here? Or is that a different issue? Yes, that's not an issue, Your Honor.  Mr. Conlon, where in the complaint should Hartford have looked to find the duty to defend? Well, the policy language requires damages because of injury arising out of oral or written publication of material that disparages an organization's goods. That doesn't answer. I know the language of the policy. Where in the complaint does one look to find the language Hartford should have seen to know it should defend? Paragraph 97 and 98 of the fifth count, which is the unfair competition count, which is a Lanham Act section 43A claim, Your Honor. The Lanham Act encompasses various other claims within it. And that includes. We're talking which ones again? Count five, paragraph 97 and 98. They're very short. And they say, marketing and sales that falsely imply GKS's authority despite LNN's exclusive Wisconsin distribution rights. And then 98 says, statements constitute unfair competition in violation of section 43A of the Lanham Act. Now, if you turn to this case we cited from the Federal Circuit, Zenith, it says 43A provides the basis for what are generally known as false advertising, trade libel, and product disparagement. So the nature of that very statute incorporates disparagement fact allegations, where the nature of them is sufficiently planted to evidence saying. And there's a case that I called attention to in my June 5th letter that is directly on point. If it was a California case, this would be a very short argument. But it is a New York decision. But that New York decision involves distribution rights, involves implicit disparagement, and finds the breach of contract decision inapplicable. And what the court said, and this is an appellate division published case from the state court called Natural Organic Zinc v. One Beacon American Insurance decided in 2013, referenced again in my 28-J response. And it said basically the following about the facts there. Although the complaint in the federal action alleged that the announcement of HON as exclusive distributor  because NPN remained the sole distributor for the region by nature of the agreement, the product disparagement claim does not necessarily arise out of NOI's alleged breach of contract, and thus coverage is not excluded under the policy. What's my best California case to say what you're citing in New York? I would say that there's three different decisions that are. To be fair, I just wanted to make sure what I concentrate on here. Because I've read what you've alleged. And I've read the complaint. And I know that if I read the complaint, that's the first place I look to find this. And then if it's not in the complaint, I'm going to get some, there's other law, if you will, that I have to look to the far corners of the same. So I'm just trying to make sure I focus in. And if it's 96-97, I understand what you're doing. 97-98 is one of the arguments. That's one of the arguments. The other argument is based on the fact that, remember, the district court found disparagement. It had no difficulty with disparagement. What it found, though, was that the disparagement was based on the content of our termination letter. And it was concerned that the termination letter post-dated the contract breach. I found that what the district court was doing, the district court was not looking at 97-98 at all. Was looking at another section, which didn't seem to me to even suggest that this was what it was even in there for. So I was a little worried about your, if that was where you were going, I was a little worried, 59, because the letter wasn't even attached to deal with what the district court focused on. The letter was attached to show that you were terminated. Right. But that followed earlier oral communications, which are reasonably inferred, that led to the termination. Well, but now just a minute. I don't know that I can reasonably infer anything. Yes, you can, Your Honor. Well, just a minute. That is not why it was attached here. It's not attached for what was in the communication as to whether it was false or true. It was attached to show that on January 15, 2007, GKS terminated the plaintiff. Right. But it is also part of account for tortious interference. Where? Where? I want to make sure about that. Where is it? It's an exhibit to the complaint, Your Honor. I know what it is. Yeah. But I just didn't see it. If I go to tortious interference, I don't even see it going back to that. Well, the tortious interference. I mean, it doesn't seem to me that a plaintiff gets away with showing that they terminated on a certain day by attaching a letter, and then all of a sudden striking up a big allegation in his complaint regarding that. And then the district court says, but it doesn't matter. It was sent late anyway. But my worry is I want to know really what you're saying, because I'm not too complimentary of that being the way we put a complaint together on a duty to defend. Well, the facts are skinny. I'll give you that, Your Honor. But the courts have found similar cases sufficient to clarify the defense. There's a decision of this court, Pension Trust, that found even remote facts buried within the complaint are sufficient to trigger the defense. Well, I understand remote facts. But it's got to be remote facts that have something to do with that which is being alleged. Right. This is not even about something that's being alleged. It is, Your Honor, because they're saying that we engage in this course of activity that was nefariously designed to off this distributor, and that the ultimate culmination of that act was the letter that we've discussed. I didn't have any of that in the complaint. That's in the letter. Well, the letter. I look at all the notes. You have to look at the letter as well, Your Honor. And there's a decision called Burlington that I cited on June 3rd that explained that even where all that was alleged is negligence, and the total evidence of that was a police report that was not referenced in the complaint. That's good enough if it's consistent with the theory alleged to suggest a basis for liabilities outside of the exclusion. That's a big if. If it's consistent with the theory alleged. And here's the theory alleged. There was no theory alleged. There was, cautious interference. Oh, I see. I see. That's the hook, if you will. And the reason that works. I'm glad to understand that that's it, because then I can make a decision about that. Right, but that's sufficient in this context. If you look at the Charlotte Roos case, there was far less there than there is here. And if you look at the paragraph 97 and 98 allegations, they're exactly on point in terms of natural organics. And they're fully consistent with three different decisions in California that have been cited, career development in the 2011 case, tower insurance in the 2012 case, and Payne Weber, a 2007 case. So going back to that decision, which is directly on point, the court stated, independent of the breach of contract claim for which there is plainly no coverage, there they had a press release. The press release allegedly violated the Lanham Act by suggesting to NPN's customers that its products were not genuine or that the remaining inventory was somehow unauthorized. Well, we didn't have any rights to distribute in Wisconsin. We're telling people, here we are. Buy from us. We're this little distributor. By making that statement, we called into question the position asserted by LNM that they had exclusive distribution rights. That derogated their rights in the view of the ultimate purchasers of their product. That's been deemed sufficient in this case, which cited an earlier district court decision in New York from the Southern District. For a similar proposition, it is consistent with the Burgett case, a decision in 2011, where the representation that one had a trademark in a piano brand called SOMER was challenged. And the court found that the unclarity as to whether the defendant had a sub-license agreement in order to be able to sell the branded piano. Calling into question the exclusive rights to trademark in SOMER was sufficient to evidence potential coverage that fell within the scope of coverage for disparagement. The disparagement. Counsel? Counsel, Judge Gould, I have a question for you. Does the word disparagement occur in the complaint that was tendered to Hart? Yes, and it's absolutely irrelevant that it does not, because it's fact not made. But wait, wait, wait, counsel. Just answer my question.  That word is not used. Anywhere in the complaint. Well, then let me please give you my next question. If that's not in the complaint, and if a Lanham Act claim can include disparagement, what tells Hartford that this particular Lanham Act claim does include disparagement? It's the reading of the facts and the understanding of the impact of the statements upon the other party that would have the effect of parties thinking less of it by virtue of what's said about it. And that's consistent with a number of cases in California on implicit disparagement. And there's nothing untoward about that sort of conclusion, because tortious interference isn't a tort itself. It's just a remedy for underlying tortious acts. Most tortious interference claims are based on things like disparagement, which have to be established as a basis for the liability they're asserting. Indeed, the California Supreme Court has said as much in describing the scope of tortious interference claims that it's based on some underlying tort. But you kind of moved from where Judge Gould was, as I understood it. He was still under Lanham Act, and he was still in count five. And that's why I thought his questions were particularly appropriate. So let's look exactly, if you take the Lanham Act count and you read the decision that I just referenced in Organic, it's directly on point, because it said, or the remaining inventory was somehow unauthorized. Well, if the question in that case was whether you had the right to sell exclusive of the rights of others, and that was questioned, and that was enough evidence disparagement. So when we were purporting to be a distributor in Wisconsin where we had no distribution rights, or were perceived to have none by LNN, who purportedly had exclusive distribution rights, we were calling into question its statements to the public. We were calling it a liar, because we were saying to anyone, no, no, they can't control distribution rights. We can sell free and clear of any other constraints on that ability. And there's a plethora of case law, if you look carefully at California law on implicit disparagement, that has gone beyond requiring recitation of each of the elements. The Charlotte Roos case is very emblematic of that. I understand there's stuff about you don't need to recite all of the elements. All Judge Gould was asking you about, which is, again, a question which worries me, I looked at whether this was a Lanham Act claim, and I thought, well, how is Hartford to suggest everything to do with a Lanham Act claim is automatically going to go deal with disparagement? That's not the standard. The question is, is there any potential for coverage? You're saying, is it obvious to Hartford on the face of the complaint? If that were the law, we'd have a different situation. Well, no, I didn't ask that. I said, what element was missing? It didn't seem to me there were any elements pled. Well, the elements pled are in paragraph 97 and 98 as an example. It is quite cleanly stated that there are facts that call into question the rights of another. And that rights of another who's called into question is L&N. It's no different than saying that you don't perhaps have the right to control the marketplace, as in Burgett, for pianos because those distribution rights are being attacked. And it's been found, and as I say, there's another case that they didn't even distinguish called Bistocraft from Kansas, where they also had licensing rights that were questioned. And that's all that was going on. It was just questions about whether the licensing rights of one party were what they purported to be. And the Bistocraft case said, no, that's enough to evidence a disparagement. It was cited in their opening brief. They didn't distinguish it. They didn't cite it. They didn't say anything about it in the appellee's brief. Why? Because they can't. I think your time is done. I think we have the fair essence of your argument. We'll turn the time then to Mr. Heineke. And I might not say that right, Heineke. Close enough, Your Honor. I wish it was Heineken, but unfortunately, that's not true either. Good morning. My name's Rex Heineke. I'm with Aiken Gump. I'm here on behalf of Hartford Casualty Insurance Company. We submit there are two fundamental reasons that this court should affirm the district court's decision. One, the court was discussing with opposing counsel, and that is whether there was any disparagement pled here at all. The second one is, even if the court were to assume or conclude that there was disparagement here, we submit that there was no coverage under the exclusion for claims arising from a breach of contract. Let me turn to what the court was discussing with opposing counsel. Opposing counsel has, at this point, it's a kind of evolving argument. But at this point, they're up to three different things they claim constitute disparagement. The first is the termination letter that Skagg sent to LNN. The problem with that is that LNN didn't claim that the contents of that letter caused it any injury. So there's no disparagement claim. What they claim is they were unlawfully terminated. Fine, they can pursue that. But that's not a disparagement claim. They're not saying that because Skagg said these bad things about us, we were harmed. They're just saying, you terminated us. That's the harm. So I think the district court was absolutely right to say that that was not a disparagement claim. Now, the second basis they claim for disparagement is oral statements that they say must have occurred between Skagg's and the Guatemalan beer producers. But there's nothing in the complaint about those statements. They're not even referred to. Their contents are not there. That is utter and complete speculation, I submit. As to what those statements might have been and whether they might have been disparaging, in any event, LNN chose not to sue on that. And it was free to choose not to sue. It's the master of its complaint. It didn't sue about that. So whatever those statements may or may not have been, they can't constitute disparagement. And the third thing is what opposing counsel started with this morning, these comments about distribution in Wisconsin. As the court points out, the LNN Act covers all sorts of different things. So how is Hartford supposed to know it was a disparagement claim? And when you read what is alleged there, what it boils down to is, let's say, two companies sell the same sort of product in the same geographic area. That's disparagement? That can't possibly be disparagement. That's what's going on here. There's no allegation that anyone had ever been told by LNN or by anyone else that it had or even claimed to have the exclusive distribution rights. So again, there's no basis we submit for any kind of disparagement claim here. Set that aside. Assume the court says, well, we'll think about that. Maybe you'll even find there's disparagement. We submit that under the arising under provision for breach of contract, that exclusion would apply here. Now, let's go back to the three things that the plaintiffs claim are disparagement. First one is the letter of termination. Well, it seems clear, as the district court found, that that falls within the contract exclusion, the exclusion for coverage for any breach of contract. It's about a breach of contract. The oral statements that they submit, not only, as I said, they don't exist, but what are they supposed to have been about? They're supposed to have been skags telling the Guatemalans, you should terminate LNN. Again, arises out of the breach of contract exclusion. And the last one, the Wisconsin situation, could only arise if the Guatemalans breached their contract with LNN by selling the skags and letting it distribute in Wisconsin. Now, I think that's all clear. What opposing counsel will say in regard to that, and said in their brief, is two things. They said, one, that in the Wisconsin situation, skags didn't have a contract with the Guatemalans. That's true. We don't dispute that. But it is equally true if the court looks at the Southgate and the Medill cases, which we cited. They both say expressly that in California, to have the breach of contract exclusion apply, you do not have to have contractual privity. So that takes care of that argument. The other argument is, how do you interpret the term arising under? Out of. I'm sorry, out of. We submitted this 28-J letter yesterday, which is consistent with the prior authority. We've got five cases here. The Continental case by this court. The Southgate case by the California Court of Appeal. The Medill case by the California Court of Appeal. And admittedly, unpublished decisions, but in the last two years, one of them just about a month ago, by this court, strategics and trenches. And they all say the same thing. And I'll just quote trenches, because that's the most recent one. It says, in California, the phrase arising out of, and this is in the context of a exclusion of coverage, is construed broadly, even if in an exclusion, to mean originating from, flowing from, or having a connection with. That is California law. That is what these five cases say consistently. The term arising out of, even in an exclusion in California, is broadly interpreted, and we respectfully submit, easily covers the three things here. Indeed, if you go and look at LNN's complaint, and just read the first paragraph, what it says is, it lists its causes of action, and it says, they stem from the breach of contract. This was a case, fundamentally, about alleged breach of contract. Insurance does not cover those kinds of business disputes. And so for that second reason, we respectfully submit that we would be entitled to summary judgment here. I'd be happy to try and answer any questions that the court may have, but I think I've had an opportunity to make my point. I asked the questions I had of counsel, and I would have had you respond. You took right up the response. So I think you've said what I, or you've answered the questions I would have asked. Thank you. I appreciate it. You're out of time. I didn't realize I'd lost my rebuttal. Oh, you won't. The good presiding judge always gives the counsel 30 seconds of rebuttal, thinking that we might have taken away your good argument with our questions. Well, Your Honor, I'd just point out that in paragraph 113, it talks about in the tortious interference count that through the contact detailed above, they tortiously interfered without good cause and wrongfully did so. And that incorporates prior allegations, which incorporate the reference termination statements, which termination statements follow earlier oral statements, which oral statements were denigrating of L&N, which obviously denigrating of it. And that's a basis for inferring disparagement. And if you read Charlotte Roos, if you read Forget, if you read Michael Taylor, you'll find that this is sufficient. And the cases they just referenced, we respond to in our June 5th letter. Read organics, Your Honor. It is absolutely on point. It explains why on our facts, there should be a finding that there was a defense and the breach of contract exclusion doesn't bar a defense. Thank you. Appreciate your argument. Case 12-5651, Skaggs versus Hartford is submitted.
judges: Korman, GOULD, SMITH